UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

FILED

JUL 29 2013


Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| PLAINTIFF, | ) |
| v. | ) No. 3:13-CR- 3:13-cr-78 |
| | ) JUDGES THAPAR / GUYTON |
| JANET WELCH, | ) |
| | ) |
| DEFENDANT. | ) |

## WAIVER OF INDICTMENT

JANET WELCH, the above-named defendant, who is accused of:

COUNT 1

(Conspiracy to Commit an Offense against the United States)

At all times material hereto:

1. Pilot Corporation and Pilot Travel Centers, LLC, (collectively referred to as "Pilot"), headquartered in Knoxville, Tennessee, operated travel plazas throughout the United States and served as one of the largest suppliers of diesel fuel to over-the-road trucking companies in the country. Through its "direct sales" division, which consisted of national and regional vice presidents, sales directors, sales managers, account representatives, and others, Pilot induced its trucking company customers to purchase its diesel fuel by offering various incentives, including diesel fuel price discounts.

2. The defendant, JANET M. WELCH, has been employed as a senior regional account representative in Pilot's direct sales division since before 2008. As a direct sales regional account

representative, the defendant, JANET M. WELCH, has supported Pilot's business of providing diesel fuel price discounts in various forms to over-the-road trucking companies for the purpose of inducing those companies to purchase diesel fuel for commercial use from Pilot's numerous travel plazas throughout the United States, instead of purchasing diesel fuel from Pilot's competitors.

3. Since 2008, the defendant, JANET M. WELCH, has supported other Pilot direct sales employees who have negotiated diesel discount deals with Pilot's customers. Pilot's diesel discount deals typically have involved one of three options: "retail-minus" pricing, "cost-plus" pricing, or a combination of the two known as "better-of." For its retail-minus discount deals, Pilot typically has agreed to provide the customer with a discount equal to the retail gallon price of diesel minus a negotiated "x" cents. For its cost-plus discount deals, Pilot typically has agreed to provide the customer with a discount price equal to a benchmarked "cost" for a gallon of diesel plus a negotiated "x" cents. A Pilot customer with a "better of" pricing discount deal would have had both a retail-minus deal and a cost-plus deal in place for specified Pilot travel plazas, and the customer receives whichever discount is greater at the time of each diesel purchase – the cost-plus price or the retail-minus price.

4. Whether a Pilot customer has negotiated a "retail minus 'x' cents" discount, a "cost plus 'x' cents" discount, or a "better of" pricing discount, the customer would choose to receive its discount generally in two ways - "off-invoice" or by way of a monthly rebate check. Customers who chose to receive their discount "off-invoice" from Pilot generally purchased their diesel from Pilot on credit, and regularly received invoices from Pilot for those purchases. For Pilot's "off-invoice" customers, their agreed-upon discount would be applied to determine the periodically invoiced amount. For Pilot customers who chose to receive their discount in the form of a rebate, Pilot's retail price for diesel at the point and time of sale was charged to the customer, and then at the end of the month, the customer's negotiated discount was applied to all the customer's purchased gallons for

the month, so that the customer's aggregated price discount for the month was provided in the form of a rebate check.

5. The diesel fuel price discounts offered by Pilot generally varied among Pilot's numerous travel plazas, and the benchmark that Pilot used as its "cost" for "cost-plus" pricing also varied from region to region. Due to the multiple variables of Pilot's diesel price discounts, it was challenging for many of Pilot's customers to track whether they were in fact receiving the full amount of their agreed upon price discount from Pilot.

## The Conspiracy and its Object

6. From 2008, through approximately April 2013, within the Eastern District of Tennessee, and elsewhere, the defendant, JANET M. WELCH, did knowingly and willfully conspire, combine, confederate and agree with other persons, including Pilot employees, to commit an offense against the United States, namely mail fraud, in violation of 18 U.S.C. §1341, that is for the purpose of obtaining money from Pilot customers, by means of materially false pretenses, false representations, and omissions, the defendant, JANET M. WELCH, with the encouragement, and generally at the direction, and with the agreement, of other Pilot employees, and with the intent to defraud, caused fraudulently reduced rebate checks to be sent by mail and commercial interstate carriers to certain targeted Pilot customers, so that Pilot could fraudulently retain rebates that were owed to the customers and so that Pilot could create and maintain the materially false pretense that those customers were in fact receiving their agreed upon diesel price discount with Pilot for the purpose of inducing those customers to continue their purchasing of diesel fuel from Pilot, rather than a competitor, and for the purpose of increasing Pilot's profits and its sales personnel commissions.

### The Purpose of the Conspiracy

7. The primary purpose of the conspiracy was to send fraudulently reduced monthly rebate amounts to some of Pilot's trucking company customers, so that Pilot could fraudulently retain rebates that were owed to those customers and so that Pilot could create and maintain the false pretense that those customers were in fact receiving their agreed upon diesel price discount with Pilot, to induce those customers, by means of materially false pretenses, false representations, and omissions, to continue their purchasing of diesel fuel from Pilot, rather than a competitor, and thereby increase the profitability of the targeted customers' accounts to Pilot itself and increase the sales commissions of Pilot's direct sales employees assigned to the targeted customers' accounts.

### Manner and Means of the Conspiracy

8. It was part of the conspiracy that the defendant, JANET M. WELCH, was encouraged by, and generally instructed by, and conspired, combined, confederated and agreed with, other Pilot direct sales division employees to reduce Pilot customers' monthly rebates without the customers' knowledge, to mail rebate checks that stated fraudulently reduced rebate amounts to customers that created and maintained the materially false pretense that the customers were receiving the full benefit of their agreed upon diesel price discount with Pilot, and to make false representations by way of material omission that Pilot was accurately, and honestly, determining the customers' rebate amounts based on the customers' agreed upon diesel discount price with Pilot.

9. It was part of the conspiracy that the defendant, JANET M. WELCH, prepared and emailed for approval monthly spreadsheets to other Pilot direct sales personnel that contained the actual rebate amounts due to all of the listed Pilot customers and a deceptively reduced rebate amount for some of the listed Pilot customers.

10. It was part of the conspiracy that once it was approved by how much deceptively to reduce a customer's rebate, the defendant, JANET M. WELCH, with the approval of other Pilot

direct sales division employees, would cause a check in the fraudulently determined amount to be mailed or sent by commercial carrier to the targeted customer.

11. It was part of the conspiracy that on November 19 and 20, 2012, Pilot held a sales-training meeting for the company's diesel direct sales division at its headquarters located at 5508 Lonas Drive, Knoxville, Tennessee. It was part of the conspiracy that all direct sales division employees were required to attend this training. It was part of the conspiracy that during this mandatory training, the defendant, JANET M. WELCH, was required to attend various "break-out" sessions led by other Pilot direct sales employees. It was further part of the conspiracy, that during one of the required break-out sessions, a Pilot sales director taught Pilot direct sales personnel how to defraud, without detection, some of Pilot's customers who chose to receive their discount in the form of a monthly rebate. It was further part of the conspiracy that the defendant, JANET M. WELCH, actively participated in that break-out session and expressed her mutual agreement to participate in the conspiracy to defraud.

## Overt Act in Furtherance of the Conspiracy

12. In furtherance of the conspiracy, the following overt act, among others, was committed in the Eastern District of Tennessee: On or about November 19, 2012, during a mandatory Pilot sales-training meeting at Pilot's headquarters located at 5508 Lonas Drive, Knoxville, Tennessee, a Pilot sales director led a training session in which he encouraged and taught Pilot direct sales personnel how to defraud, without detection, some of Pilot's customers who chose to receive their discount in the form of a monthly rebate, and in which the defendant, JANET M. WELCH, actively participated and expressed her mutual agreement to participate in the conspiracy to defraud; in violation of Title 18, United States Code, Section 371;

being advised of the nature of the charges and of her rights, hereby waives in open court prosecution by Indictment and consents that the proceeding may be by Information instead of by Indictment.

7/29/13
Date

*Janet M. Welch*
Janet Welch
Defendant

07/29/13
Date

*[signature]*
Robert R. Kurtz
Attorney for Defendant