UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

FILED
JUL 29 2013

Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:13-cr-78 |
| vs. ) | Judges THAPAR GUYTON |
| ) | |
| JANET M. WELCH, ) | |
| ) | |
| Defendant. ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Janet M. Welch, and the defendant's attorney, Robert R. Kurtz, have agreed upon the following:

1. The defendant will waive indictment and arraignment and plead guilty to an information charging the defendant with one count of conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371.

The punishment for this offense is as follows: up to five (5) years imprisonment, a fine of not more than $250,000, not more than three (3) years supervised release, and a mandatory assessment of $100, in addition to any applicable forfeiture and restitution.

2. The defendant has read the information, discussed the charges and possible defenses with defense counsel, and understands the crime charged. The defendant is pleading guilty because the defendant is in fact guilty. In order to be guilty of the offense of conspiracy to commit an offense against the United States charged in the information, the defendant agrees that each of the following elements of the crime must be proved beyond a reasonable doubt:

Defendant's Initials JW

1

a. that there existed an agreement between two or more persons to commit an offense against the United States, namely mail fraud, that is, with the intent to defraud, to knowingly devise and intend to devise and to participate in a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and omissions, and for the purpose of executing such scheme and artifice, knowingly causes any matter or thing to be delivered by mail or commercial interstate carrier, in violation of Title 18, United States Code, Section 1341;

b. that the defendant knowingly and voluntarily joined and participated in the conspiracy; and

c. that an overt act was committed by at least one conspirator in furtherance of the conspiracy.

3. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

a. Since before 2008, Pilot Corporation and Pilot Travel Centers, LLC, (collectively referred to as "Pilot"), headquartered in Knoxville, Tennessee, have operated travel plazas throughout the United States and have served as one of the largest suppliers of diesel fuel to over-the-road trucking companies in the country. Through its "direct sales" division, which consists of national and regional vice presidents, sales directors, sales managers, account representatives, and others, Pilot induces its trucking company customers to purchase its diesel fuel by offering various incentives, including diesel fuel price discounts.

Defendant's Initials JW

2

b.  Defendant Welch has been employed by Pilot since approximately 1998 and has served as a senior regional account representative in Pilot's direct sales division since before 2008. As a direct sales regional account representative, Defendant Welch has supported Pilot's business of providing diesel fuel price discounts in various forms to over-the-road trucking companies for the purpose of inducing those companies to purchase diesel fuel for commercial use from Pilot's numerous travel plazas throughout the United States, instead of purchasing diesel fuel from Pilot's competitors.

c.  Since before 2008, Defendant Welch has supported other Pilot direct sales employees who have negotiated diesel discount deals with Pilot's customers. Typically, Pilot's diesel discount deals have involved one of three options: "retail-minus" pricing, "cost-plus" pricing, or a combination of the two known as "better-of" pricing. For its retail-minus discount deals, Pilot has typically agreed to provide the customer with a discount equal to the retail gallon price of diesel minus a negotiated "x" cents. For its cost-plus discount deals, Pilot has typically agreed to provide the customer with a discount price equal to Pilot's "cost" for a gallon of diesel plus a negotiated "x" cents. However, under its cost-plus discount deals, Pilot's *actual* cost has not been the benchmark used for Pilot's "cost" in cost-plus discount deals. Rather, Pilot's "cost" in its cost-plus discount deals typically has been determined by the Oil Price Information Services' ("OPIS") wholesale rack price for a specific OPIS rack or racks tied to the particular Pilot travel plaza where the diesel fuel was purchased. For better-of pricing discount deals, the customer has both a retail-minus deal and a cost-plus deal in place for specified Pilot travel plazas, and the customer receives whichever discount is greater at the time of each diesel purchase – the cost-plus price or the retail-minus price.

d.  Whether a customer has negotiated a "retail minus 'x' cents" discount, a "cost plus 'x' cents" discount, or a "better of" pricing discount, the customer may choose to receive its discount

Defendant's Initials JW                                         3

generally in two ways - "off-invoice" or by way of a monthly rebate check. Customers who receive their discount "off-invoice" from Pilot generally purchase their diesel from Pilot on credit, and regularly receive invoices from Pilot for those purchases. For those customers, their agreed-upon discount should be applied to determine the periodically invoiced amount. For Pilot customers who choose to receive their discount in the form of a rebate, Pilot's retail price for diesel at the point and time of sale is charged to the customer, and then at the end of the month, the customer's negotiated discount is applied to all of the customer's purchased gallons for the month, so that the customer's aggregated price discount for the month is provided in the form of a rebate check.

  e. What has been complicated for many Pilot customers is that the discount deals offered by Pilot typically vary among Pilot's numerous travel plazas, and the OPIS rack-price benchmark that Pilot uses as its "cost" for "cost-plus" pricing also varies from region to region, and within each region. There are hundreds of OPIS "racks" generating "rack-prices" on a daily basis for hundreds of travel plazas. Put another way, due to the multiple variables at play in diesel fuel pricing, and how those variables affect the diesel discount deals offered by Pilot to its customers, it can be challenging for customers to track whether they are in fact receiving the full amount of their agreed upon price discount from Pilot.

  f. Since at least 2008, Defendant Welch has been encouraged by, and generally instructed by, and has agreed with, other Pilot direct sales division employees to deceptively reduce some Pilot customers' monthly rebates without the customers' knowledge, to mail rebate checks that state fraudulently reduced rebate amounts to customers that create and maintain the materially false pretense that the affected Pilot customers are receiving the full benefit of their agreed upon diesel price discount with Pilot, and to make false representations by way of material omissions that

Defendant's Initials JW

4

Pilot is accurately, and honestly, determining the affected customers' rebate amount based on the customers' agreed upon diesel discount price with Pilot.

g. Defendant Welch participated in the conspiracy to commit mail fraud charged in the information by, among other things, preparing and emailing monthly spreadsheets for approval to other Pilot direct sales personnel that contained the actual rebate amounts due to all of the listed Pilot customers and a deceptively reduced rebate amount for some of the listed Pilot customers. Once the deceptively reduced rebate amount was approved by the other Pilot direct sales personnel for the targeted Pilot customer(s), Defendant Welch would cause an amount, generally by way of a check containing the deceptively reduced rebate amount to be sent to the affected Pilot customer, generally by way of the United States mail or commercial carrier. One of the Pilot customers who was adversely affected by Defendant Welch's participation in the conspiracy to commit mail fraud was Dana Transport in New Jersey. During her participation in the conspiracy to commit mail fraud, Defendant Welch knowingly, and with the intent to defraud, caused numerous deceptively reduced monthly rebate amounts to be sent to Dana Transport in New Jersey from Pilot headquarters in Knoxville, Tennessee.

h. On November 19 and 20, 2012, Pilot held a sales-training meeting for the company's diesel direct sales division at its headquarters located at 5508 Lonas Drive, Knoxville, Tennessee. All direct sales division employees were required to attend this training. During this mandatory training, Defendant Welch was required by Pilot to attend various "break-out" sessions led by other Pilot direct sales employees. Defendant Welch was required to attend a break-out session led by a Pilot national accounts sales director. During this training session, this Pilot national accounts sales director encouraged and taught Pilot direct sales personnel how to defraud, without detection, some of Pilot's customers who chose to receive their discount in the form of a monthly rebate. During

Defendant's Initials JW

5

this manual rebate training session, Defendant Welch actively participated in the discussion and expressed her mutual agreement with the conspiracy to defraud charged in the information.

i. Defendant Welch and her coconspirator Pilot employees caused fraudulently determined rebate check amounts to be sent to some of Pilot's customers, so that Pilot could fraudulently retain rebates that were owed to the customers and so that Pilot could create and maintain the false pretense that those customers were in fact receiving their agreed upon diesel price discount with Pilot, for the purpose of inducing those customers to continue their purchasing of diesel fuel from Pilot, rather than a competitor.

j. The deceptive reduction of a customer's rebate not only induced the customer to continue purchasing diesel from Pilot, but also increased the profitability of the customer's account to Pilot itself and had the potential of increasing the sales commissions of the Pilot direct sales employees assigned to the affected customer's account. That said, it appears that the deceptive manual rebate reductions in which Defendant Welch participated did not likely cause any significant, direct increase in her sales commission, due to Defendant Welch's monthly commission cap.

k. Defendant Welch admits that, in violation of 18 U.S.C. § 371, from 2008 through April 2013, she conspired and agreed with other Pilot employees to commit an offense against the United States, namely mail fraud, in violation of 18 U.S.C. § 1341, that is for the purpose of obtaining money from Pilot customers, by means of materially false pretenses, false representations, and omissions, Defendant Welch, with encouragement, and generally at the direction, and with the agreement, of other Pilot direct sales division employees, and with the intent to defraud, caused fraudulently reduced rebate checks to be sent by mail and commercial interstate carriers to certain targeted Pilot customers, so that Pilot could fraudulently retain rebates that were owed to the

Defendant's Initials JW         6

customers and so that Pilot could create and maintain the materially false pretense that those customers were in fact receiving their agreed upon diesel price discount with Pilot for the purpose of inducing those customers to continue their purchasing of diesel fuel from Pilot, rather than a competitor, and for the purpose of increasing Pilot's profits and its sales personnel's commissions.

l.   As an overt act in furtherance of the conspiracy to commit an offense against the United States charged in the information, on or about November 19, 2012, during a mandatory Pilot sales-training meeting at the company's headquarters located at 5508 Lonas Drive, Knoxville, Tennessee, Pilot's national accounts sales director led a training session in which he encouraged and taught Pilot direct sales personnel how to defraud, without detection, some of Pilot's customers who chose to receive their discount in the form of a monthly rebate amount, and in which Defendant Welch actively participated and expressed her mutual agreement to participate in the conspiracy to defraud charged in the information.

m.   Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the United States agrees that for sentencing purposes in this case, that the loss amount for which the United States will seek to hold Defendant Welch responsible under United States Sentencing Guidelines § 2B1.1 shall be limited to fraudulent rebate reductions personally caused by Defendant Welch, rather than every fraudulent rebate reduction caused by the entire conspiracy, and the United States further agrees that for sentencing purposes in this case, that the loss amount for which the United States will seek to hold Defendant Welch responsible under United States Sentencing Guidelines § 2B1.1 shall be limited to no more than $1,000,000, and therefore, Defendant Welch's applicable guideline under § 2B1.1(b)(1) should not exceed § 2B1.1(b)(1)(H), which sets forth the offense level increase for a loss between $400,000 and $1,000,000.

n.   Additionally, although the investigation may reveal that more than 50 victims were

Defendant's Initials JW                              7

involved in the entire conspiracy among Pilot employees to defraud Pilot customers, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the United States agrees that Defendant Welch should be held responsible for victims within the meaning of United States Sentencing Guidelines § 2B1.1(b)(2) only for those victims whose rebates she personally reduced at the direction of others and which were reduced in furtherance of the conspiracy to defraud, and the United States further agrees that for sentencing purposes, Defendant Welch's participation in the conspiracy to defraud involved no more than 49 victims, and therefore, Defendant Welch's applicable guideline under § 2B1.1(b)(2) should not exceed § 2B1.1(b)(2)(A), which sets forth the offense level increase for an offense involving 10 or more, but fewer than 50, victims.

    o.    The government further agrees, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), that Defendant Welch's participation in the conspiracy did not involve a sophisticated means within the meaning of United States Sentencing Guidelines § 2B1.1 (b)(10)(C).

    4.    The defendant understands that by pleading guilty the defendant is giving up several rights, including:

    a)    the right to be indicted by a grand jury for these crimes;

    b)    the right to plead not guilty;

    c)    the right to a speedy and public trial by jury;

    d)    the right to assistance of counsel at trial;

    e)    the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    f)    the right to confront and cross-examine witnesses against the defendant;

    g)    the right to testify on one's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses; and

Defendant's Initials *JW*        8

h) the right not to testify and to have that choice not used against the defendant.

5. The parties agree that the appropriate disposition of this case would be the following as to each count:

a) The Court may impose any lawful term of imprisonment, any lawful fine, and any lawful term of supervised release up to the statutory maximum;

b) The Court will impose special assessment fees as required by law; and

c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea. The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

6. The defendant further agrees to cooperate fully, completely, and truthfully with any and all law enforcement agents and personnel of the United States Attorney's Office. This cooperation includes, but is not limited to, meeting with and being interviewed by such law enforcement agents or personnel of the United States Attorney's Office whenever requested. The defendant further agrees not to protect anyone who was truly involved and not to falsely implicate anyone who was not truly involved in the commission of criminal offenses. The defendant further

Defendant's Initials JW          9

agrees to testify completely and truthfully before a federal grand jury, at any trial, or at any other proceeding if called upon by the United States to do so. Upon request by the United States, the defendant must furnish all documents, objects and other evidence in the defendant's possession, custody, or control that are relevant to the United States' inquiries. The defendant and defense counsel also knowingly, voluntarily, and intentionally waive the defendant's right (where applicable) to have defense counsel present during the course of cooperation, including questioning or court appearances.

7. To ensure the defendant's truthful cooperation, the United States agrees, except as provided below, not to use any self-incriminating information provided by the defendant pursuant to this written plea agreement against the defendant. However, nothing in this plea agreement shall restrict the use of any information (1) known to the United States prior to entering into this written plea agreement, (2) obtained from any other source, or (3) concerning the defendant's prior criminal record. Should any of the following occur (1) the defendant provides false or misleading information during the course of the defendant's cooperation, (2) the defendant moves to withdraw the defendant's guilty plea, or (3) the defendant breaches any other of the terms of this plea agreement, then the United States may make use of any information provided by the defendant to law enforcement authorities at any time (including any information provided during formal or informal proffer sessions prior to signing this plea agreement, and any information provided after signing this plea agreement) for any purpose in any subsequent proceeding, including grand jury, trial, and sentencing phases of this case or in any other prosecutions or proceedings against the defendant or others. Moreover, if the United States determines at any time (before or after sentencing) that the defendant has failed to cooperate fully, completely, and truthfully, or otherwise violated any of the terms of this plea agreement, it will be free to withdraw any favorable

Defendant's Initials JW

10

sentencing motion filed by the United States, including motions filed under U.S.S.G. § 5K1.1 and/or 18 U.S.C. § 3553.

8. At the time of sentencing, the United States may bring to the Court's attention the nature, extent, and value of the defendant's cooperation so that it may be considered in determining a fair and appropriate sentence under the facts of the case.

9. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense, including violations of conditions of release or the commission of additional offenses prior to sentencing, the United States will be free not to make such motion or to withdraw such motion if already made, and will be free to recommend to the Court that the defendant not receive any offense level reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

10. The defendant agrees to pay the special assessment in this case prior to sentencing.

11. The defendant agrees that the court shall order restitution, pursuant to any applicable provision of law, for any loss caused to the victims of the conspiracy offense charged in this case who were victimized by Defendant Welch's participation in the charged conspiracy, and any such restitution order shall impose joint and several liability as the court deems appropriate. As required by law, Defendant Welch's restitution obligation under 18 U.S.C. § 3663A is not limited by

Defendant's Initials JW

11

Paragraph 3(m) and Paragraph 3(n) above.

12. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amounts shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel.

In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit

Defendant's Initials JW               12

report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

13. (a) In consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense committed, the defendant agrees not to file a direct appeal of the defendant's conviction or sentence except the defendant retains the right to appeal a sentence imposed above the sentencing guideline range or any applicable mandatory minimum sentence (whichever is greater) determined by the district court.

(b) In addition, the defendant knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack the defendant's conviction and/or resulting sentence. The parties agree that the defendant retains the right to raise, by way of collateral review under § 2255, claims of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant by the time of the entry of judgment.

14. This agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this agreement in any way (including but not limited to failing to enter guilty plea as agreed herein, moving to withdraw the guilty plea after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement

Defendant's Initials JW    13

it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or statutory speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea in this case.

[PLEA AGREEMENT CONTINUES ON NEXT PAGE]

Defendant's Initials _JW_   14

15. This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

WILLIAM C. KILLIAN
UNITED STATES ATTORNEY

7/29/13 (Original of copy signed 6/27/13)
Date

By: _____
Francis M. Hamilton III
David P. Lewen, Jr.
Assistant United States Attorneys

6/27/13
Date

_____
Janet M. Welch
Defendant

06/27/13
Date

_____
Robert R. Kurtz
Attorney for the Defendant

Defendant's Initials ___          15