```
 1          IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF TENNESSEE
 2       NORTHERN DIVISION, AT KNOXVILLE, TENNESSEE

 3

 4
   United States of America,              :
 5                                         :
                   Government,             :
 6                                         :
   Vs.                                     :
 7                                         :3:13cr78
   Janet Welch,                           :
 8                                         :
                   Defendant,              :
 9

10
           Transcript of Change of Plea before the
11  Honorable Amul R. Thapar on Monday, July 29, 2013.

12
   APPEARANCES:
13

14              ON BEHALF OF THE GOVERNMENT:

15              F.M. Hamilton, III
                David Lewen
16              Assistant U.S. Attorney

17

18              ON BEHALF OF THE DEFENDANT:

19              Robert Kurtz
                Attorney at Law
20

21

22              Jolene Owen, R.P.R.
           800 Market Street, Suite 131
23              P.O. Box 2201
           Knoxville, Tennessee, 37901
24              (865) 384-6585

25
```

1

1         COURTROOM DEPUTY:  We are here for a change of

2 plea in docket number 3:13cr78, United States of America

3 versus Janet Welch.

4         Is the government present and ready to proceed?

5         MR. HAMILTON:  Trey Hamilton for the

6 government.  Present and ready, Your Honor.

7         COURTROOM DEPUTY:  Is the defendant present and

8 ready to proceed?

9         MR. KURTZ:  Present and ready.  Robert Kurtz on

10 behalf of Janet Welch.

11         THE COURT:  Mr. Kurtz, would you mind

12 approaching the podium with your client.

13         Mr. Hamilton, who has the original copy of the

14 Plea Agreement so I know?

15         MR. HAMILTON:  I have it and am prepared to

16 submit it at this time, if you like.

17         THE COURT:  Why don't you hold it for a minute.

18 I think what I will do is when I go over it with

19 Ms. Welch I will have you give it to her, if that is

20 okay.

21         MR. HAMILTON:  Yes.

22         THE COURT:  Okay, great.  Thank you.

23         Ms. Welch, I know you have answered a number of

24 questions already this morning, correct?

25         MS. WELCH:  Yes, Your Honor.

2

1      THE COURT:  Okay.  I am going to go through a

2  list of questions as well.  It's important that you

3  understand my questions, and I am going to cut you a

4  deal.  That is if you don't understand my questions, you

5  stop me and tell me you don't understand them.  I will

6  rephrase them in a way that is more coherent.  Is that,

7  can we have that agreement?

8      MS. WELCH:  Yes, Your Honor.

9      THE COURT:  Okay.  Can you please place the

10  defendant under oath.

11      COURTROOM DEPUTY:  Yes, Your Honor.

12                        JANET WELCH

13  was first duly sworn and testified as follows:

14      THE COURT:  Now, Ms. Welch, you went over an

15  Information with Judge Guyton, correct?

16      MS. WELCH:  Yes, Your Honor.

17      THE COURT:  And you waived reading of that

18  indictment or the Information, is that correct?

19      MS. WELCH:  Yes, Your Honor.

20      THE COURT:  Okay, I just want to ask you a few

21  questions about that before I let you fill out that

22  waiver.

23      Mr. Kurtz, I am going to ask questions.  I know

24  Judge Guyton asked some questions as to competence

25  before he went through his proceeding.  I am going to do

3

1  so as well.  I will use them for both my questions on

2  the information and questions on the plea.  I am not

3  going to make her answer the questions twice.  Is that

4  all right with you?

5          MR. KURTZ:  It is understandable.  We agree,

6  Your Honor.

7          THE COURT:  Ms. Welch, how old are you?

8          MS. WELCH:  44.

9          THE COURT:  Tell me how far you went in school.

10          MS. WELCH:  Some college.

11          THE COURT:  Okay.  Where did you go to college?

12          MS. WELCH:  Pellissippi.

13          THE COURT:  How far did you go?

14          MS. WELCH:  A year.

15          THE COURT:  What did you do after that?

16          MS. WELCH:  Started working.

17          THE COURT:  Where did you start working?

18          MS. WELCH:  Various jobs.  Glass company and

19  then I started in the Knoxville Hilton and different

20  companies.

21          THE COURT:  Okay.  When did you end up at

22  Pilot?

23          MS. WELCH:  In 1998.

24          THE COURT:  You so you have worked there for

25  about 15 years, is that a fair --

4

1          MS. WELCH:  16 in October.

2          THE COURT:  16 in October.  Great.

3          Have you ever during any portion of your life

4  been treated for any mental illnesses?

5          MS. WELCH:  No, Your Honor.

6          THE COURT:  Have you ever been addicted to

7  narcotics of any kind?

8          MS. WELCH:  No, sir.

9          THE COURT:  Have you taken any narcotic drugs,

10  hallucinogens or tranquilizers in the past 24 hours?

11          MS. WELCH:  No, sir.

12          THE COURT:  Have you taken any medicine in the

13  past 24 hours?

14          MS. WELCH:  Yes.

15          THE COURT:  Why don't you tell me about that.

16          MS. WELCH:  I take Prilosec for stomach issues.

17  I have ulcers.

18          THE COURT:  How often do you take that?

19          MS. WELCH:  Once a day.

20          THE COURT:  How long have you been taking that?

21          MS. WELCH:  Probably three years.

22          THE COURT:  It does not affect your ability --

23  obviously I can tell, but it doesn't affect your ability

24  to think clearly or understand my questions?

25          MS. WELCH:  No.

5

1        THE COURT:  Have you taken any other pills of
2   any kind in the past 24 hours?

3        MS. WELCH:  I took some Ibuprofen yesterday.

4        THE COURT:  Yesterday is the last time you took
5   Ibuprofen?

6        MS. WELCH:  Yes, sir.

7        THE COURT:  What did you take, one or two?

8        MS. WELCH:  Two.

9        THE COURT:  400 milligrams?

10       MS. WELCH:  Yes.

11       THE COURT:  That wears off in your experience
12  in four to six hours?

13       MS. WELCH:  Yes, sir.

14       THE COURT:  Have you drank any alcoholic
15  beverages in the past 24 hours?

16       MS. WELCH:  No, Your Honor.

17       THE COURT:  Mr. Kurtz, do you have any question
18  as to this defendant's competence at this time?

19       MR. KURTZ:  No, Your Honor, I do not.

20       THE COURT:  During your representation of her
21  she has been taking the medication.  Have you ever seen
22  any erratic decisionmaking or irrational thinking that
23  made you question her competency in anyway?

24       MR. KURTZ:  Never, Your Honor.

25       THE COURT:  I do find that the defendant is

6

1   competent to proceed.  It's clear to me that she

2   understands my questions.  She is looking me in the eye

3   and is proceeding as someone should.

4         Mr. Hamilton, do you have any question as to

5   this defendant's competence to plead at this time?

6         MR. HAMILTON:  The government does not.

7         THE COURT:  Great.

8         Now, you went over the Information, you

9   reviewed it, correct?

10         MS. WELCH:  Yes.

11         THE COURT:  All right.  I just want to talk to

12   you for a couple of minutes about your rights with

13   regard to a grand jury charge versus an information

14   charge.  Once I understand that you understand your

15   rights, then I will let you sign the waiver, okay?

16         MS. WELCH:  Yes, sir.

17         THE COURT:  You understand you have a

18   constitutional right to be charged by an indictment of a

19   grand jury, but you can waive that right and consent to

20   being charged by information of the United States,

21   correct?

22         MS. WELCH:  Yes.

23         THE COURT:  All right.  I am going to go over a

24   few other things.  I am going to read them to you and

25   then I am going to ask them to you.  Instead of an

7

1   indictment the felony charge in this has been brought by

2   the United States Attorney by the filing of an

3   Information.  Unless you waive indictment, you cannot be

4   charged with a felony, unless a grand jury finds by

5   return of an indictment that there is probable cause to

6   believe that a crime has been committed and that you

7   committed it.  If you do not waive indictment, the

8   government may present the case to the grand jury and

9   request it to indict you.  The grand jury is composed of

10  at least 16 individuals and not more than 23 people, at

11  least 12 of whom must find that there is probable cause

12  to believe that a crime has been committed and that you

13  committed the crime in order to return an indictment

14  against you.

15          The grand jury might or might not indict you.

16  If you waive indictment by the grand jury, the case will

17  proceed against you on the information just as though

18  you have been indicted.

19          Do you understand all of your rights with

20  regard to the grand jury?

21          MS. WELCH:  Yes, Your Honor.

22          THE COURT:  Has anyone made any threats or

23  promises to induce you to waive your right to be charged

24  by a grand jury?

25          MS. WELCH:  No, Your Honor.

8

1      THE COURT:  If you choose to be charged by

2 information, you do not give up any of your other

3 constitutional rights and we'll go over those during the

4 plea proceeding.  Have you gone over those with your

5 attorney?

6      MS. WELCH:  Yes, Your Honor.

7      THE COURT:  They are also listed in your Plea

8 Agreement, correct?

9      MS. WELCH:  Yes, sir.

10      THE COURT:  You understand all those

11 constitutional rights?

12      MS. WELCH:  Yes, sir.

13      THE COURT:  Great.

14      Mr. Kurtz, have you gone over her rights

15 vis-a-vis the grand jury and the information with her?

16      MR. KURTZ:  I have.

17      THE COURT:  And based on your consultation with

18 her do you believe she understands her rights?

19      MR. KURTZ:  I do.

20      THE COURT:  Do you believe she understands that

21 by waiving her rights she can be charged with an

22 information?

23      MS. WELCH:  Yes, sir, Your Honor.

24      THE COURT:  Ms. Welch, do you wish to waive

25 your right to indictment by a grand jury and choose to

9

1   be charged by the filing of an information?

2          MS. WELCH:  Yes, Your Honor.

3          THE COURT:  Okay.  Mr. Kurtz, do you have the

4   waiver?

5          MR. KURTZ:  We do.

6          THE COURT:  Can you both execute the waiver,

7   please.

8          Mr. Hamilton, the waiver of indictment is an

9   exact copy of the Information, is that a fair statement?

10         MR. HAMILTON:  The body of it is, yes, sir.

11         THE COURT:  Thank you, the body of it is.  I

12  always ask this and I apologize.  You don't need me to

13  sign the waiver, correct?

14         MR. HAMILTON:  That has not been the custom in

15  this district.  The Court is welcome to.

16         THE COURT:  I am happy just to follow the

17  custom.  I want to make sure.

18         I do determine that the defendant has

19  competently exercised her right to waive the

20  presentation of facts of this case to a grand jury and

21  has signed the necessary waiver in open court.  I do

22  find the waiver of indictment is knowingly and

23  voluntarily made and is, therefore, accepted.  We will

24  file the waiver of indictment in the record.

25         I know Judge Guyton has already unsealed the

1    record.  I don't need to do that.

2           Ms. Welch, I am now going to proceed to the

3    plea proceeding.  I am going to ask you some questions

4    about that, all right.  It's my understanding first and

5    foremost that you want to plead guilty, correct?

6           MS. WELCH:  Yes, Your Honor.

7           THE COURT:  I should have mentioned this.  I

8    know Judge Guyton probably went over it as well.  You

9    understand you are under oath and if you give false

10   answers to any of my questions you can be charged with

11   perjury or making a false statement, correct?

12          MS. WELCH:  Yes.

13          THE COURT:  Do you have any questions about

14   that?

15          MS. WELCH:  No, Your Honor.

16          THE COURT:  Great.  Now, in going over -- I am

17   going to go back a little and just talk about the

18   Information for a second.  You reviewed the Information,

19   correct?

20          MS. WELCH:  Yes, sir, Your Honor.

21          THE COURT:  You went over it with your

22   attorney?

23          MS. WELCH:  Yes, Your Honor.

24          THE COURT:  Did you talk to him about

25   everything you know about the case?

11

1      MS. WELCH:  Yes, Your Honor.

2      THE COURT:  Did you in talking to him about

3   everything you know about the case talk about any

4   possible defenses that you may have to the allegations

5   of the government?

6      MS. WELCH:  Yes, Your Honor.

7      THE COURT:  Did you go over every paragraph in

8   the Information?

9      MS. WELCH:  Yes, Your Honor.

10     THE COURT:  Do you feel like you have discussed

11  everything with Mr. Kurtz you need to discuss in order

12  to enter a knowing, intelligent and voluntary plea here

13  today?

14     MS. WELCH:  Yes, Your Honor.

15     THE COURT:  So there is no questions lingering

16  in your mind about geez, I don't know the answer to

17  this?

18     MS. WELCH:  No, sir.

19     THE COURT:  Okay.  Have you in doing so, did

20  you discuss the maximum possible penalties that you can

21  face by pleading guilty?

22     MS. WELCH:  Yes, sir.

23     THE COURT:  Do you understand the charges

24  against you?

25     MS. WELCH:  Yes, sir, Your Honor.

1      THE COURT:  Are you happy with your lawyer's

2  advice and representation in this case?

3      MS. WELCH:  Yes, Your Honor.

4      THE COURT:  Okay.  I want to go over -- I know

5  you have discussed with him the maximum penalties.  I

6  know you heard them from Judge Guyton as well or

7  Mr. Hamilton may have stated them.  I want to go over

8  them with you as well.

9      It's my understanding you are pleading guilty

10  to a 371 charge, which I call just a conspiracy to

11  commit a criminal offense, a federal criminal offense.

12  Is that correct?

13      MS. WELCH:  Yes, Your Honor.

14      THE COURT:  Do you understand that carries with

15  it a statutory maximum penalty of five years in prison,

16  correct?

17      MS. WELCH:  Yes, Your Honor.

18      THE COURT:  It also carries with it a fine of

19  not more than $250,000, a mandatory special assessment

20  of a hundred dollars, restitution and potential

21  forfeiture.  Do you understand that?

22      MS. WELCH:  Yes, Your Honor.

23      THE COURT:  Finally, I want to talk to you

24  about supervised release.  I left that out.  It carries

25  with it a term of three years, up to three years of

1    supervised release.  Do you understand that?

2            MS. WELCH:  Yes, Your Honor.

3            THE COURT:  Okay.  Now, supervised release is a

4    period of supervision that follows any period of

5    incarceration.  All right?

6            MS. WELCH:  Yes, sir.

7            THE COURT:  And it puts conditions on you that

8    are stricter than society in general.  I am going to

9    give you an example.  I could say to you as a condition

10   of your supervision, for example, that you either --

11   let's say you have to finish college.  Okay, now, any

12   one else in society doesn't have to do that, right?

13           MS. WELCH:  Right.

14           THE COURT:  Okay, so let's say that you have

15   two years to finish college, even though you have only

16   got one year in, because I want you to finish in the

17   three years of supervision.  Does that make sense?

18           MS. WELCH:  Yes, Your Honor.

19           THE COURT:  Let's say you don't finish in two

20   years.  What happens to you?

21           MS. WELCH:  I could be incarcerated.

22           THE COURT:  That's right.  Then your

23   supervision could start anew.  Do you understand that?

24           MS. WELCH:  Yes, sir.

25           THE COURT:  It can be like a revolving door if

14

1   you don't comply with the conditions of supervision, do

2   you understand that?

3           MS. WELCH:  Yes.

4           THE COURT:  Do you understand in order for the

5   government to prove you guilty of a criminal violation

6   they have to prove you guilty beyond a reason doubt?

7           MS. WELCH:  Yes.

8           THE COURT:  And do you understand that is a

9   difficult standard of proof?

10          MS. WELCH:  Yes, Your Honor.

11          THE COURT:  I want to tell you something about

12  a supervised release violation.  If, for example -- I am

13  going to give you another condition.  I say you can't

14  drink alcohol.  Mr. Hamilton learns you are drinking

15  alcohol.  He can bring a charge that you violated your

16  terms of supervision to the Court's attention.  He only

17  needs to prove that by a preponderance of the evidence.

18  What that means is he just has to show it's more likely

19  than not and tip the balance of the scales of justice in

20  his favor, which is much different than beyond a

21  reasonable doubt.  Do you understand that?

22          MS. WELCH:  Yes, Your Honor.

23          THE COURT:  Do you have any questions about

24  that?

25          MS. WELCH:  No, Your Honor.

15

1          THE COURT:  Do you any questions about any of

2    the maximum penalties in this case?

3          MS. WELCH:  No, Your Honor.

4          THE COURT:  Do you understand that if the Court

5    accepts your plea of guilty it can impose the maximum

6    penalty?

7          MS. WELCH:  Yes, Your Honor.

8          THE COURT:  Do you understand if the plea of

9    guilty is accepted, the Court can impose the same

10   penalty as though you pled not guilty, stood trial and

11   were convicted by a jury?

12         MS. WELCH:  Yes, sir.

13         THE COURT:  Do you understand the offense to

14   which you are pleading guilty is a felony offense and

15   that if your plea is accepted you will be adjudged

16   guilty of that offense and such adjudication may deprive

17   you of valuable civil rights such as the right to vote,

18   right to hold public office, the right to serve on a

19   jury and the right to possess any kind of firearm?

20         MS. WELCH:  Yes, sir.

21         THE COURT:  Are you a citizen of the United

22   States?

23         MS. WELCH:  Yes, sir.

24         THE COURT:  Do you understand people who are

25   not citizens of the United States, if they plead guilty

16

1    to this offense, they will most likely be deported?

2              MS. WELCH:  Yes, Your Honor.

3              THE COURT:  I want to talk to you about the

4    collateral consequences of pleading guilty.  What I mean

5    by that is I want to talk to you about what happens when

6    you plead guilty.  I am just going to give you some

7    examples, but I want you to understand the examples are

8    much broader.  For example, in the example it's easier

9    to understand what I mean.

10             By pleading guilty you can lose any

11   professional license.  You loose the right to possess a

12   firearm which means you lose concealed carry or other

13   licenses you have with regards to guns.  You will also

14   find that, as a convicted felon, it is much more

15   difficult to find a job.  These are just some of the

16   examples of what a collateral consequence is of pleading

17   guilty.  They are much broader than that.  I can't even

18   imagine some, nor can you.

19             Do you understand by pleading guilty there are

20   ramifications that we can't even think about today?

21             MS. WELCH:  Yes, Your Honor.

22             THE COURT:  Did you and your attorney talk

23   about how the sentencing guidelines might apply in your

24   case?

25             MS. WELCH:  Yes, Your Honor.

1          THE COURT:  I want to talk to you about that as

2     well.  The first thing I want to tell you is that the

3     sentencing guidelines are now merely advisory.  What

4     that means is they are a starting benchmark for the

5     Court.  The Court uses them along with the factors found

6     in 18 United States Code § 3553(a), which are the

7     statutory factors of sentencing.  Did you go over those

8     with your attorney?

9          MS. WELCH:  Yes, Your Honor.

10          THE COURT:  Do you understand that the Court

11     will use the guidelines and the statutory factors to

12     determine what a sufficient sentence is in your case?

13          MS. WELCH:  Yes, Your Honor.

14          THE COURT:  Do you have any questions at all

15     about how sentencing works?

16          MS. WELCH:  No, Your Honor.

17          THE COURT:  Do you understand the Court will

18     not be able to determine a sentence for your case until

19     after the Presentence Report has been completed and you

20     and the government have had an opportunity to challenge

21     the facts and conclusions reported by the probation

22     officer?

23          MS. WELCH:  Yes, Your Honor.

24          THE COURT:  Do you understand the Court is not

25     bound by any stipulation of facts between you and the

18

1   government and the court will with the aid of the

2   Presentence Report determine what facts are relevant to

3   sentencing?

4          MS. WELCH:  Yes, Your Honor.

5          THE COURT:  Do you understand that parole has

6   been abolished and, if you are sentenced to prison, you

7   will not released on parole?

8          MS. WELCH:  Yes, Your Honor.

9          THE COURT:  Do you understand even if the Court

10  can place you on probation, it may or may not do so?

11         MS. WELCH:  Yes.

12         THE COURT:  Do you have any questions about

13  anything we have gone over so far?

14         MS. WELCH:  No, sir.

15         THE COURT:  I want to talk to you about your

16  constitutional rights.  The Court reminds and advises

17  you that under the Constitution and laws of the United

18  States you have the right to plead and the persist in

19  your plea of not guilty.  You have the right to be tried

20  by a jury and at a speedy and public trial you would

21  have the right to the assistance of counsel, right to

22  confront and cross-examine the witnesses who testify

23  against you and the right to refuse to testify yourself,

24  unless you voluntarily chose to do so in our own

25  defense.

1    If you decide not to testify, that cannot be

2  held against you and the jury will be instructed that

3  they cannot hold it against you.  At such trial you

4  would be presumed innocent until such time, if ever, as

5  the government established your guilt by competent

6  evidence beyond a reasonable doubt.  At such trial you

7  would be entitled to the issuance of subpoenas to compel

8  the attendance of witnesses on your behalf.

9    The government would have to pay for the

10  attendance of witnesses, if you could not afford to do

11  so.  Do you understand if you plead guilty you give up

12  all the rights I have just mentioned?

13    MS. WELCH:  Yes, Your Honor.

14    THE COURT:  Do you understand if you plead

15  guilty there will not be a further trial of any kind in

16  your case so that by pleading guilty you are giving up

17  the right to a trial?

18    MS. WELCH:  Yes, Your Honor.

19    THE COURT:  If you plead guilty, do you

20  understand you will also have to waive your right not to

21  incriminate yourself since I will have to ask you

22  questions about what you did in order to satisfy myself

23  that you are guilty as charged and you will have to

24  acknowledge your guilt?

25    MS. WELCH:  Yes, Your Honor.

1          THE COURT:  Are you willing to waive and give

2    up your right to trial and the other rights I have just

3    discussed?

4          MS. WELCH:  Yes, Your Honor.

5          THE COURT:  Mr. Hamilton, how many plea

6    agreements have been tendered to the defendant?

7          MR. HAMILTON:  One.

8          THE COURT:  Okay is this the most favorable --

9    obviously, if it's one, it's the most favorable one she

10   could receive?  In other words, maybe it's a better

11   way -- that is a bad question.

12         You have had conversations with Mr. Kurtz

13   before the Plea Agreement.  When I look at the Plea

14   Agreement, and I am doing this off memory, but it said

15   something like you would only hold her accountable for

16   the dollar amount to which she was personally

17   responsible.  You had specific guideline sections, the

18   number of victims that -- you can correct me.  I think

19   you agreed that she didn't use sophisticated means so

20   there were specific sections in there, correct?

21         MR. HAMILTON:  There are references to the

22   guidelines and the Plea Agreement.  The United States

23   made one plea offer to this defendant.

24         THE COURT:  Did you negotiate the terms with

25   Mr. Kurtz?  That is what I am trying to get ahold of.

21

1  In other words, did you all have discussions before the

2  Plea Agreement?

3          MR. HAMILTON:  The United States' recollection

4  is that we presented the plea resolution scenario and it

5  was accepted.

6          THE COURT:  Okay.  Mr. Kurtz -- thank you,

7  Mr. Hamilton.

8          Mr. Kurtz, you obviously talked to Mr. Hamilton

9  during your representation of the defendant?

10         MR.KURTZ:  Yes, Your Honor.

11         THE COURT:  And did you share all those

12  communications with Ms. Welch?

13         MR. KURTZ:  The ones that were relevant to her

14  case and to the plea negotiations that took place, yes,

15  we had discussions about those negotiations and all the

16  discussions I had with the U.S. Attorney's office.

17         THE COURT:  This Plea Agreement, you agree with

18  Mr. Hamilton, is the only Plea Agreement that your

19  client received?

20         MR.KURTZ:  That is correct.

21         THE COURT:  Ms. Welch, you heard what was just

22  said.  Is it a fair statement, to the best of your

23  knowledge, that Mr. Kurtz shared all discussions that he

24  had with Mr. Hamilton about the Plea Agreement and your

25  case in particular with you?

1          MS. WELCH:  Yes, Your Honor.

2          THE COURT:  Do you feel like you have discussed

3   and understand the terms of the Plea Agreement?

4          MS. WELCH:  Yes, Your Honor.

5          THE COURT:  All right.  I want to go over that

6   with you now.

7          Mr. Hamilton, can you give her the original.

8          I just want as we go, Ms. Welch -- I noticed I

9   like this practice that they follow here.  We don't do

10  it in our district, which is they have you initial each

11  page.  Do you see that?

12         MS. WELCH:  Yes, Your Honor.

13         THE COURT:  As I go through it I am going to

14  ask you each time -- I know it is going to get a little

15  repetitive, but if those are your initials because I

16  want to be assured that the Plea Agreement in front of

17  you is the same one that you reviewed with your attorney

18  before signing it.  Is that fair?

19         MS. WELCH:  Yes, Your Honor.

20         THE COURT:  Okay.  Great.  You see the Plea

21  Agreement in front of you.  It now has handwritten in it

22  3:13cr78.  Do you see that in the upper right-hand

23  corner?

24         MS. WELCH:  Yes, sir.

25         THE COURT:  It says United States of America

23

1 versus Janet M. Welch, correct?

2    MS. WELCH:  Correct.

3    THE COURT:  You will see that the first

4 paragraph indicates you are going to plea to an

5 information which we are doing here today.  It lists the

6 maximum penalties we went over, correct?

7    MS. WELCH:  Yes, sir.

8    THE COURT:  The second paragraph it says that

9 you are pleading guilty because you are in fact guilty

10 and then lists what the United States would have to

11 prove beyond a reasonable doubt, correct?

12    MS. WELCH:  Yes, Your Honor.

13    THE COURT:  That goes on to the second page.

14 At the bottom of that page -- that is the original, you

15 are looking at the original Plea Agreement, right?

16 That's the very page that you initialed before.

17    MS. WELCH:  Yes, Your Honor.

18    THE COURT:  Great.  Now, if you look at the

19 beginning of the second page -- and I am just going to

20 summarize this for you.  You understand if this case

21 were to go to trial the United States would have to

22 prove these three essential elements beyond a reasonable

23 doubt, correct?

24    MS. WELCH:  Yes.

25    THE COURT:  First, that you agreed with another

24

1  person to commit mail fraud.  Do you see that?

2          MS. WELCH:  Yes, sir.

3          THE COURT:  Again I am summarizing.  That is

4  that with the intent to defraud you helped -- so instead

5  it says you knowingly.  You conspired with another, so

6  you worked with another, to devise and intended to

7  devise and participate in a scheme and artifice to

8  defraud and basically -- and I am again restating --

9  they are stating the exact terms in here.  Do you

10 understand that?

11         MS. WELCH:  Yes, sir.

12         THE COURT:  I am going to try and state it in

13 plain English because Congress writes things in one way.

14 They are doing what they should do which is putting it

15 in here.  Do you understand that this is the language of

16 what they have to prove?

17         MS. WELCH:  Yes, Your Honor.

18         THE COURT:  What it means in plain English is

19 that you agreed with another person to defraud people to

20 get money.

21         MS. WELCH:  Yes, Your Honor.

22         THE COURT:  You understand that?  The

23 government would have to prove that beyond a reasonable

24 doubt.  They would also have to prove that you committed

25 or you conspired with that person to commit mail fraud.

1  Do you understand that?

2          MS. WELCH:  Yes, Your Honor.

3          THE COURT:  It basically means you used the

4  mails in furtherance of your scheme to defraud.

5          MS. WELCH:  Yes.

6          THE COURT:  Knowingly and voluntarily joined in

7  the conspiracy and that an act was committed in

8  furtherance of the conspiracy.  Do you understand they

9  have to prove all that beyond a reasonable doubt?

10          MS. WELCH:  Yes, Your Honor.

11          THE COURT:  Great.

12          The next paragraph, which we are going to go

13  over later, but three gives a summary, which as it

14  states, it's not all the facts and you and the

15  government can admit other facts during sentencing.

16  Gives an entire summary and it goes on.

17          Now, the bottom of page 2 you initialed,

18  correct?

19          MS. WELCH:  Yes, Your Honor.

20          THE COURT:  The bottom of page 3 you initialed,

21  correct?

22          MS. WELCH:  Yes.

23          THE COURT:  The bottom of page 4 you initialed.

24          MS. WELCH:  Yes, sir.

25          MR. KURTZ:  And the bottom of page 5 you

1   initialed.

2           MS. WELCH:  Yes, sir.

3           THE COURT:  The bottom of page 6 you initialed.

4           MS. WELCH:  Yes, Your Honor.

5           THE COURT:  The bottom of page 7?

6           MS. WELCH:  Yes, sir.

7           THE COURT:  Okay.  I am going to stop you

8   there.

9           All of those facts from pages I think it was 3

10  to 7 where you initialed, you initialed because you

11  agreed with those facts, correct?

12          MS. WELCH:  Yes, Your Honor.

13          THE COURT:  Those facts are in fact true and

14  that is why you initialed the document?

15          MS. WELCH:  Yes, Your Honor.

16          THE COURT:  Now, here I am stopping you because

17  we go from facts in my mind, and we may think of this

18  differently -- you tell me if you think of it

19  differently.  At the end of paragraph (l) is the end of,

20  as I see it, the facts and then this is what I was

21  talking about earlier, (m), (n) and (o) are sentencing

22  guideline agreements, correct?

23          MS. WELCH:  Yes, Your Honor.

24          THE COURT:  Let's go over those a second.  At

25  the bottom of paragraph (m) it says that the United

1   States will seek to hold the defendant responsible, the

2   dollar amount they'll limit it to is $1 million.  Do you

3   see that?

4           MS. WELCH:  Yes, Your Honor.

5           THE COURT:  They are going to seek an offense

6   level between $400,000 to $1 million.

7           MS. WELCH:  Yes, Your Honor.

8           THE COURT:  Do you understand that is not

9   binding on the Court?

10          MS. WELCH:  Yes, Your Honor.

11          THE COURT:  Even though the United States and

12  you may agree to that, the Court will with the aid of

13  the Presentence Report determine what level is relevant

14  to sentencing.  Do you understand that?

15          MS. WELCH:  Yes, Your Honor.

16          THE COURT:  Is that correct?

17          MS. WELCH:  Yes, sir.

18          THE COURT:  Mr. Hamilton, you agree with that

19  is correct, correct?

20          MR. HAMILTON:  Generally, Your Honor.  I might

21  just suggest the following, if I may.

22          THE COURT:  You may.

23          MR. HAMILTON:  I may have misheard the Court.

24  I thought the Court said the United States would seek a

25  sentence in the range of 400,000 to $1 million.  It is

1    our understanding that that is intended to be a ceiling.

2    In other words, there are two limitations, one is that

3    the loss had to have been caused by Ms. Welch.  And two

4    that loss that was caused by her has a ceiling of

5    $1 million.  It's possible that the range could be lower

6    than that, depending on what the facts ultimately show.

7            THE COURT:  Let me ask you a question,

8    Mr. Hamilton.  I think that is fair point.  If it is

9    between 200 and 400,000, as the probation officer

10   determines it, you are saying that the United States

11   waives the right to object to that and put on proof that

12   it is between 400 and a million or are you saying

13   something different?

14           MR. HAMILTON:  No, I think that is exactly what

15   we are saying.  I wouldn't see it as a necessarily --

16   well, I don't think that we would say that.  I think

17   what we would say is that we aren't going to seek

18   anything more than $1 million.  I don't think we are

19   saying if the probation office determines that -- we are

20   not waiving any right to object to the Presentence

21   Report, but we are saying that we aren't going to seek

22   anything, a loss figure that is outside the range of

23   400,000 to a million dollars.

24           THE COURT:  That is how I understood it.  That

25   is why I asked the question.

1    Stay standing.  I am going to ask you another

2  question in a minute.

3    Ms. Welch, do you understand what the United

4  States is bound by, as I understand this, and

5  Mr. Hamilton, I will give him a chance to explain if I

6  am wrong --

7    Is that they will not seek, even if the

8  evidence shows you are responsible later for

9  1.8 million, the United States cannot seek to hold you

10  responsible for more than a million and that is one of

11  the benefits of your bargain.

12    If the Presentence Report determines that it is

13  300,000 the United States can put on evidence in front

14  of me to, they can object and show that you are actually

15  personally responsible for any amount up to a million.

16  Do you understand that?

17    MS. WELCH:  Yes, Your Honor.

18    THE COURT:  Mr. Hamilton, did I fairly and

19  accurately summarize the way this works now?

20    MR. HAMILTON:  That is correct, Your Honor.

21    THE COURT:  Additionally, now I am going on to

22  paragraph (n).  The investigation may reveal more than

23  50 victims were involved in the conspiracy.  Now I am

24  skipping -- and again is that the United States agrees

25  that your participation in the conspiracy involved no

1   more than 49 victims and, therefore, the United States

2   limits its ability, the way I understand this, to that

3   number.  In other words, the most the United States can

4   seek to hold you accountable for is up to 50 victims.

5          MS. WELCH:  Yes, Your Honor.

6          THE COURT:  All right.  Between 0 and 49.  What

7   they are saying is it's between 10 and 49, but again I

8   understand this to operate like the dollar figure did.

9   If probation comes back and says it's 55, they are bound

10  to seek 49.  It doesn't mean it's binding on me.  Do you

11  understand that?

12         MS. WELCH:  Yes, Your Honor.

13         THE COURT:  Is that accurate, Mr. Hamilton?

14  Does this operate the same?

15         MR. HAMILTON:  Yes, Your Honor.

16         THE COURT:  Finally, the United States agrees

17  that your participation did not involve a sophisticated

18  means.  That is (o).  Do you see that?

19         MS. WELCH:  Yes, Your Honor.

20         THE COURT:  The next paragraph, which is 4,

21  goes over your constitutional rights which we have

22  already covered, correct?

23         MS. WELCH:  That is correct.

24         THE COURT:  And that is your initials at the

25  bottom of this page which is page 8.

1        MS. WELCH:  Yes, Your Honor.

2        THE COURT:  Paragraph 5 just goes over what,

3   and I talked to you about this, what I will impose at

4   sentencing which includes up to the maximum penalty, the

5   mandatory special assessment, any applicable forfeiture

6   in this case, restitution that may be applicable and

7   supervised release, as we discussed before.  I don't

8   know if it lists supervised release.  It does in

9   paragraph (a).

10        MS. WELCH:  Yes, Your Honor.

11        THE COURT:  Great.  Then paragraph 6 goes on to

12   the next page.  Is this your initials at the bottom of

13   page 9?

14        MS. WELCH:  Yes, Your Honor.

15        THE COURT:  Paragraph 6 talks about your level

16   of cooperation.  Paragraph 7 talks about the how the

17   government can and cannot use your cooperation.  Do you

18   understand both of those?

19        MS. WELCH:  Yes, Your Honor.

20        THE COURT:  At the bottom that is your initials

21   at page 10?

22        MS. WELCH:  Yes, Your Honor.

23        THE COURT:  Paragraph 8 talks about that the

24   government will bring or may bring your cooperation to

25   the Court's attention, probably at sentencing, so that

32

1  the Court understands and appreciates that in

2  determining a fair and appropriate sentence in your

3  case.  Do you understand that?

4          MS. WELCH:  Yes, Your Honor.

5          THE COURT:  Paragraph 9 talks about acceptance

6  of responsibility.  Again that is a guidelines thing.

7  Did go over that with your attorney?

8          MS. WELCH:  Yes, Your Honor.

9          THE COURT:  Do you understand how that works,

10  two versus three levels and it's all determined by the

11  level you are at?

12          MS. WELCH:  Yes, Your Honor.

13          THE COURT:  Great.  Paragraph 10 says you will

14  pay the special assessment of $100 before sentencing.

15          MS. WELCH:  Yes, Your Honor.

16          THE COURT:  Paragraph 11 goes over restitution.

17  Is that your initials at the bottom of page 11?

18          MS. WELCH:  Yes, Your Honor.

19          THE COURT:  Okay.  Paragraph 12 goes over your

20  financial obligations and it includes what the United

21  States may ask you to do in furtherance of these

22  financial obligations.

23          MS. WELCH:  Yes, Your Honor.

24          THE COURT:  Is that your initials at the bottom

25  of page 12?

1         MS. WELCH:  Yes, Your Honor.

2         THE COURT:  I want to talk to you for a second
3    about Paragraph 3.  Before I do so I guess I have a
4    question for the attorneys.  Mr. Hamilton, I will start
5    with you.  And that is that here it says the defendant
6    retains the right to appeal a sentence imposed above the
7    sentencing guideline range.  Okay, there is no mandatory
8    minimum applicable in this case.  You agree with me,
9    correct?

10        MR. HAMILTON:  Yes, Your Honor.

11        THE COURT:  Can I ask you a question about the
12   applicable guideline range?  Let's say I determine the
13   guideline range is 24 and she objects and says it should
14   be 20.  I am just making this up.  Can she appeal my
15   determination of the guideline range itself instead
16   of -- in other words, it says above the applicable
17   guideline range.  Is it applicable guideline range as
18   determined by me, the applicable guideline range as
19   determined by the Presentence Report?  Does that make
20   sense?

21        MR. HAMILTON:  Paragraph 13(a) says it's the
22   applicable guideline range as determined by the District
23   Court.  That would be as determine by this Court.

24        THE COURT:  Okay.  Thank you.

25        You see, determined by the District Court?

34

1          MS. WELCH:  Yes, sir.

2          THE COURT:  Let's go over this entire thing.

3    First, the questions I was asking Mr. Hamilton.  Do you

4    understand that if I determined the guideline range is

5    24 and Mr. Kurtz says, he is crazy, it should be 20, you

6    are stuck with that determination?

7          MS. WELCH:  Yes, Your Honor.

8          THE COURT:  You can't appeal my determination

9    of the guideline range.

10         MS. WELCH:  Yes, Your Honor.

11         THE COURT:  Do you also understand that in

12   exchange for the concessions the government has given

13   you agree you won't appeal your conviction in this case?

14         MS. WELCH:  Yes, Your Honor.

15         THE COURT:  Once judgment is entered the only

16   thing you can appeal is your sentence only under very

17   limited circumstances, do you understand that?

18         MS. WELCH:  Yes, sir.

19         THE COURT:  Let's say your guideline range is

20   63 to 78 months.  I am making it up, all right.  Your

21   attorney says it should have been 24 to 30 months.  All

22   right.  I sentence you to 70 months.  So it is 63 to

23   78 months, as determined by me.  Your attorney says he

24   is off his rocker, it should be 24 to 30 months.  I

25   sentence you to 70 months.  Can you appeal?

1            MS. WELCH:  No, sir.

2            THE COURT:  Explain to me why not.

3            MR.KURTZ:  Your Honor, I think she would be

4    able to appeal under that scenario.

5            THE COURT:  Why?

6            MR. KURTZ:  The statutory maximum is 60 months.

7            THE COURT:  Thank you.  You are thinking better

8    than me this morning.

9            Right.  He is better than both of us.  Yes, you

10   can appeal because it's above the statutory max.  Let's

11   say it's 30 to 36, as I determine it, and your attorney

12   determines it 24 to 30 and I sentence you to 36 months.

13   Can you appeal?

14           MS. WELCH:  No, sir.

15           THE COURT:  Okay, why not?

16           MS. WELCH:  Because you decided and I gave up

17   the right to appeal that.

18           THE COURT:  Right.  Now, let's say I say it's

19   30 to 36 months, but I sentence you to 42 months.  Can

20   appeal?  These are hard questions.  Now this one is a

21   little trickier one.

22           MS. WELCH:  Yes, Your Honor, I can appeal.

23           THE COURT:  Okay, explain to me why.

24           MS. WELCH:  Because it's above the guideline

25   range that was set.

1        THE COURT:  Right.  I set the guideline range.
2   That is exactly right.  I set the guideline range.  Once
3   I set the guideline range, I am stuck with that for
4   purposes of appeal.  It doesn't mean I am not right.
5   You could appeal and lose, you understand that, right?
6        MS. WELCH:  Yes.
7        THE COURT:  Because I am allowed to vary
8   outside the guideline range both up and down based on
9   those other statutory factors we discussed.  Right?
10       MS. WELCH:  Yes, Your Honor.
11       THE COURT:  Okay.  Do you have any questions
12  about that?
13       MS. WELCH:  No, sir.
14       THE COURT:  You have no questions about your
15  appellate rights?
16       MS. WELCH:  No, sir.
17       THE COURT:  Okay.  Paragraph (b) talks about
18  what are essentially collateral attacks filed pursuant
19  to 2255.  Do you see you waive your right to
20  collaterally attack the conviction and sentence in this
21  case?
22       MS. WELCH:  Yes, Your Honor.
23       THE COURT:  There is one limited exception
24  which is you can challenge the ineffective assistance of
25  your counsel or prosecutorial misconduct that is not

37

1  known to you at the time of entry of judgment.  Do you

2  understand that?

3          MS. WELCH:  Yes, Your Honor.

4          THE COURT:  Okay, Mr. Hamilton, I am sorry to

5  ask you another question about this, but does the clause

6  "not known to her at the time of judgment" limit her to

7  prosecutorial misconduct and not limited to ineffective

8  assistance?  In other words, if she knows of ineffective

9  assistance before judgment but doesn't find -- here is

10  why I ask.  Let's say she knows it, but she doesn't know

11  it has prejudiced her until the time of judgment, it

12  seems to me she could clearly appeal that.  Does that

13  make sense under *Strickland*?

14          MR. HAMILTON:  Yes, Your Honor.

15          THE COURT:  Or collaterally attack that, not

16  appeal that, I am sorry.  In other words, is the clause

17  only limited to prosecutorial misconduct?

18          MR. HAMILTON:  I don't believe so, Your Honor.

19          THE COURT:  If she knows of deficient

20  performance, I guess, to know of ineffective assistance

21  under the legal definition maybe you have to know both

22  deficiency and prejudice.  If she didn't know of the

23  prejudice, she wouldn't know of ineffective assistance.

24  Is that a fair statement?

25          MR. HAMILTON:  I believe that would be fair,

1   Your Honor.

2           THE COURT:  We are talking about a bunch of

3   legal mumbo jumbo.  Here is what this says.  To be safe

4   if you know of any ineffective assistance or

5   prosecutorial misconduct, you better bring it to the

6   Court's attention right away.

7           MS. WELCH:  Yes, sir.

8           THE COURT:  If don't bring it to the Court's

9   attention right way, you waive your right to

10  collaterally attack it.

11          MS. WELCH:  Yes, Your Honor.

12          THE COURT:  Paragraph 14 just says the

13  agreement's effective once signed.  Are those your

14  initials at the bottom of the page?

15          MS. WELCH:  Yes, Your Honor.

16          THE COURT:  The Plea Agreement continues in

17  Paragraph 15, says this is the full agreement.  You see

18  that?

19          MS. WELCH:  Yes, Your Honor.

20          THE COURT:  That is your signature, your

21  attorney's signature and Mr. Hamilton's signature,

22  correct?

23          MS. WELCH:  Yes, Your Honor.

24          THE COURT:  Okay.  You did not initial this

25  page because you signed it.

1          MS. WELCH:  That is correct.

2          THE COURT:  Okay, great.

3          Aside from the Plea Agreement which we have

4  just discussed, did anyone make any other promise of any

5  kind in order to get you to plead guilty?

6          MS. WELCH:  No, Your Honor.

7          THE COURT:  What we just discussed is your

8  understanding of the full terms of the Plea Agreement?

9          MS. WELCH:  Yes, Your Honor.

10          THE COURT:  Did I leave anything out that was

11  critical to your decision to plead guilty?

12          MS. WELCH:  No, Your Honor.

13          THE COURT:  Did I leave anything out that was

14  something you had in your mind that someone promised you

15  in order to plead guilty?

16          MS. WELCH:  No, Your Honor.

17          THE COURT:  Mr. Hamilton, did I leave anything

18  out that was essential to the government's decision to

19  enter into this agreement?

20          MR. HAMILTON:  Your Honor, the government's

21  position on that, as we stated in the past, is that all

22  of the terms are in the Plea Agreement and the

23  government believes that the Court has thoroughly and

24  accurately summarized the Plea Agreement in this case.

25          THE COURT:  Do you understand, as we discussed,

40

1  if you plead guilty a Presentence Report will be

2  prepared and I will then consider the appropriate

3  sentence?

4          MS. WELCH:  Yes, Your Honor.

5          THE COURT:  Aside from the Plea Agreement,

6  again, which we just discussed, has any person,

7  including an officer or agent of the government, or any

8  of the lawyers promised or even suggested that you will

9  receive a lighter sentence or any other form of

10  leniency, if you plead guilty?

11          MS. WELCH:  No, Your Honor.

12          THE COURT:  Is your decision to plead guilty

13  your own free and voluntary act?

14          MS. WELCH:  Yes, Your Honor.

15          THE COURT:  Have you been subjected to any

16  threats or force of any kind which caused you to plead

17  guilty?

18          MS. WELCH:  No, Your Honor.

19          THE COURT:  I want you to flip back to the Plea

20  Agreement.  I am going to go over the facts with you

21  underlying the essential elements.  I am going to go

22  over them briefly because you said they are all

23  accurate.  I want to ask you about them, okay.  I will

24  ask you about specific facts.  I want you to go back to

25  page 3, I think it was, or actually page 2 is where it

41

1    starts.  You worked, as we talked about, since before

2    2008 and I think you told me you started in 1998 at

3    Pilot, correct?

4            MS. WELCH:  Yes, Your Honor.

5            THE COURT:  Okay, Pilot, just so I understand,

6    operated travel plazas that I see along the side of the

7    highway.

8            MS. WELCH:  Yes, Your Honor.

9            THE COURT:  One of the things they have is a

10   direct sales department, right?

11           MS. WELCH:  Yes, Your Honor.

12           THE COURT:  And you worked in the direct sales

13   department?

14           MS. WELCH:  Yes, Your Honor.

15           THE COURT:  How long did you work in the direct

16   sales department?

17           MS. WELCH:  All my 16 years.

18           THE COURT:  From 1998 until now you have work

19   in the direct sales department?

20           MS. WELCH:  Yes.  I actually worked in direct

21   sales for 14 years.

22           THE COURT:  What else did you do?

23           MS. WELCH:  I worked in supply and distribution

24   and in dispatch.

25           THE COURT:  Was that at the beginning?

1       MS. WELCH:  Yes, sir.

2       THE COURT:  Then you worked in direct sales?

3       MS. WELCH:  Yes.

4       THE COURT:  Okay.  One of the things direct

5  sales does is it offers I mean it may be many, but it

6  offers customers incentives, correct?

7       MS. WELCH:  Yes, sir.

8       THE COURT:  Customers being trucking companies,

9  is that fair, or are there things beyond that?

10       MS. WELCH:  Yes, Your Honor.  The trucking

11  companies, yes.

12       THE COURT:  And in the sales division you

13  worked with others to I guess induce customers to sign

14  contracts and purchase diesel or sign agreements and

15  purchase diesel fuel from your travel plazas.

16       MS. WELCH:  Not all contracts had to be signed.

17  Some were verbal contracts, yes.

18       THE COURT:  So, thank you for clarifying that.

19  You worked with others to get these diesel companies or

20  trucking companies to sign or to agree to terms of

21  reductions.

22       MS. WELCH:  Yes, sir.

23       THE COURT:  Okay.  You had, you didn't, did you

24  directly negotiate the discounts with the trucking

25  companies or did you just support others who did so?

43

1      MS. WELCH:  Both.

2      THE COURT:  What was your title at the end?

3      MS. WELCH:  Senior account manager.

4      THE COURT:  Okay.  And if you look at paragraph

5  (c) -- I am not going over this with you because I

6  always butcher it because there is multiple ways that

7  discounting was done.  Is that a fair statement?

8      MS. WELCH:  Yes, sir.

9      THE COURT:  Paragraph (c) accurately lays those

10  out.

11      MS. WELCH:  Yes, sir.

12      THE COURT:  And then ultimately the customer

13  gets to choose under this plan how to receive discounts.

14  Some were directly paid at the pump.  In other words,

15  you know, like you have a Kroger Plus card, put it in,

16  there's a direct discount taken out.

17      MS. WELCH:  Yes, Your Honor.

18      THE COURT:  Others were sent as a rebate check?

19      MS. WELCH:  Yes, Your Honor.

20      THE COURT:  Then were others just a discount on

21  the bill that they ultimately paid?

22      MS. WELCH:  Yes, Your Honor.

23      THE COURT:  Different plazas, and now I am

24  flipping the page again.  I am going to page 4 and you

25  look at paragraph (e).  That talks about how different

44

1  plazas had different deals, correct?

2          MS. WELCH:  Yes, Your Honor.

3          THE COURT:  Trucking companies it says in

4  paragraph (e) it made it difficult for them to figure

5  out whether they were getting the correct discounts.  Is

6  that a fair statement?

7          MS. WELCH:  Yes, Your Honor.

8          THE COURT:  And now I am going to read

9  paragraph (f).  I want you to listen closely.

10         "Since at least 2008 defendant Welch has been

11  encouraged by and generally instructed by and has agreed

12  with other Pilot sales direct sales division employees

13  to deceptively reduce some Pilot customers monthly

14  rebates without the customer's knowledge."

15         Is that a true and accurate statement?

16         MS. WELCH:  Yes, sir.

17         THE COURT:  To mail rebates checks that state

18  -- I am reading now -- "to mail rebate checks that state

19  fraudulently reduced rebate amounts to customers that

20  create and maintain the materially false pretext that

21  the effected Pilot customers are receiving the full

22  benefit of their agreement upon -- the full benefit of

23  their agreed upon diesel price discount with Pilot and

24  to make false representations by way of material

25  admissions that Pilot is accurately and honestly

45

1    determining the effective customer's rebate amount based

2    on the customer's agreed upon diesel discount price with

3    Pilot."

4            MS. WELCH:  Yes, Your Honor.

5            THE COURT:  Did you hear me read all that?

6            MS. WELCH:  I did.

7            THE COURT:  Is that a true and accurate

8    statement?

9            MS. WELCH:  Yes, sir.

10           THE COURT:  Now, paragraph (g) lists what you

11   did specifically, correct?

12           MS. WELCH:  Yes, sir.

13           THE COURT:  Okay.  It talks about how you

14   participated in the conspiracy to commit mail fraud by

15   preparing and emailing monthly spreadsheets for approval

16   to other Pilot direct sales personnel.  Tell me how that

17   actually worked.

18           MS. WELCH:  Each month once we got the gallons

19   and the discount information, we have a spreadsheet we

20   maintain.  I would fill it in, send it on to my salesmen

21   and they would reply back.

22           THE COURT:  Did the spreadsheet include, it

23   says here it included the deceptively reduced rebate

24   amount for some of the listed customers.  Is that a true

25   and accurate statement?

46

1           MS. WELCH:  Yes, Your Honor.

2           THE COURT:  Did it also include, would it

3  include -- and Mr. Hamilton, if you have any problem

4  with me asking this, I will stop.  Would it include the

5  actual amount they should get and the reduced amount --

6           Mr. Kurtz, you can consult with her --

7           -- or just the reduced amount?

8           MS. WELCH:  Mine originally just showed the

9  reduced amount.  Starting in February and March it

10 showed both amounts.

11          THE COURT:  February and March of this year?

12          MS. WELCH:  Yes, sir.

13          THE COURT:  Okay.  Once it was approved -- and

14 I am reading from kind of the middle of the paragraph.

15 Once the deceptive amount was approved by other

16 personnel, you would cause an amount generally by way of

17 a check -- we talked about this before, to be sent by

18 U.S. mail or commercial carrier.

19          MS. WELCH:  Yes, sir.

20          THE COURT:  And one of the customers that was

21 adversely affected was Dana Transport in New Jersey?

22          MS. WELCH:  Yes, sir.

23          THE COURT:  Okay.  And you during your

24 participation in the conspiracy you knew that the mails

25 were being used with the intent to defraud, among

47

1  others, Dana Transport in New Jersey?

2          MS. WELCH:  Yes, Your Honor.

3          THE COURT:  The check was sent, the deceptively

4  reduced amount was sent from Tennessee to New Jersey?

5          MS. WELCH:  Yes, Your Honor.

6          THE COURT:  Now, look at paragraph (h).  That

7  talks about a November of 2012 sales meeting that you

8  attended where a national sales accounts director

9  encouraged you all to defraud and you went over the

10  schemes and things like that.  Is that a fair summary?

11          MS. WELCH:  Yes, Your Honor.

12          THE COURT:  Is there anything else that I left

13  out?

14          MS. WELCH:  No, sir.

15          THE COURT:  That is what went on at that

16  meeting.  Obviously you probably talked about other

17  things.

18          MS. WELCH:  Yes, that was covered.  More went

19  on, yes.

20          THE COURT:  In paragraph (i) it talks about,

21  and am just going to read it.  "Defendant Welch and her

22  coconspirator Pilot employees caused fraudulently

23  determined rebate check amounts to be sent to some of

24  Pilot's customers so Pilot could fraudulently retain

25  rebates that were owed to the customers and so Pilot

48

1  could create and maintain the false pretense that those
2  customers were in fact receiving their agreed upon
3  diesel price discount with Pilot for the purpose of
4  inducing those customers to continue their purchasing of
5  diesel fuel from Pilot rather than a competitor."  Is
6  that accurate?
7           MS. WELCH:  Yes, Your Honor.
8           THE COURT:  Is there anything I said about that
9  that is inaccurate?
10           MS. WELCH:  No, Your Honor.
11           THE COURT:  Okay.  And you agree that the
12  customers, as paragraph (j) details, relied upon the
13  representations?
14           MS. WELCH:  Yes, Your Honor.
15           THE COURT:  Then paragraph (k) just goes
16  through the legalese, basically.  You read that and
17  reviewed that?
18           MS. WELCH:  Yes, Your Honor.
19           THE COURT:  You agree that we went over the
20  essential elements earlier.  Now we have gone over the
21  facts and that you have in fact committed between 2008
22  and 2013 a conspiracy to defraud some of Pilot's
23  customers by using the mails in furtherance and you
24  conspired and agreed to do this -- let me start over.
25           You conspired with some of the other Pilot

49

1  employees to deceive the customers, correct?

2          MS. WELCH:  Yes, Your Honor.

3          THE COURT:  And you used the mails in

4  furtherance of that conspiracy?

5          MS. WELCH:  Yes, sir.

6          THE COURT:  You agree that the customers relied

7  on your representations, including the rebate checks,

8  during the course of this conspiracy?

9          MS. WELCH:  Yes, Your Honor.

10          THE COURT:  They relied on the mail to get

11  either their rebate checks or to get whatever discount

12  was shown to them?

13          MS. WELCH:  Yes, Your Honor.

14          THE COURT:  You agree that as paragraph (l)

15  delineates, an overt act was committed in furtherance of

16  the conspiracy.  And what that means is you can agree

17  with others to do things, but some actions were taken to

18  further the conspiracy, including the mailing of the

19  rebate checks, the sending of the spreadsheets.  All

20  these things were done to further the conspiracy.

21          MS. WELCH:  Yes, Your Honor.

22          THE COURT:  Then we already went over paragraph

23  (m).

24          Is there anything I left out, Mr. Hamilton,

25  that is critical in your mind?  Obviously all the facts

1   are critical, as listed in the Plea Agreement, I

2   understand that, but that is critical to her pleading

3   guilty.  In other words, have I covered all the facts

4   underlying the essential elements?

5           MR. HAMILTON:  Yes.  Thank you, Your Honor, for

6   understanding the government's technical response to

7   some of these questions.

8           THE COURT:  I appreciate the technical

9   response.  I hope you will protect whatever you need to.

10          MR. HAMILTON:  My only suggestion would be.  I

11  think the Court very accurately identified the universe

12  of potential overt acts which would be e-mails and

13  spreadsheets and checks that were mailed, but the overt

14  act that is identified in paragraph (l) is the meeting

15  that the Court previously referenced.  That would be the

16  government's only possible --

17          THE COURT:  Why don't you say that so she

18  understands it.  In other words, you and I may

19  understand what you are talking about.  Just explain it.

20          MR. HAMILTON:  As the Court previously pointed

21  out, one of the essential elements of the conspiracy

22  charge is the government's proof of an overt act.  As

23  the Court previously identified, there would be other

24  facts relevant to it, to this plea process and to the

25  guilty plea process and the overall facts.  The overt

1  act that is identified in the factual basis in paragraph

2  (1) to satisfy that essential element is the mandatory

3  November 19th, 2012, sales meeting at 5508 Lonas Drive

4  where Pilot's national accounts director led a training

5  session which encouraged top Pilot direct sales

6  personnel how to defraud without detection some of

7  Pilot's customers who receive their discount in the form

8  of a monthly rebate amount.  This meeting the Court

9  previously referenced in the preceding paragraph.

10          THE COURT:  What Mr. Hamilton and I are talking

11  about, Ms. Welch, so you understand it, is in order to

12  prove you guilty the government would have to show you

13  conspired with others and then you took actions in

14  furtherance of that conspiracy.  Do you understand that?

15          MS. WELCH:  Yes, sir.

16          THE COURT:  It can't be under 371, it can under

17  a different conspiracy, that you just agreed.  You

18  actually have to take actions in furtherance of that

19  conspiracy.  Do you understand?

20          MS. WELCH:  Yes, Your Honor.

21          THE COURT:  There is many actions listed in

22  this Plea Agreement, including e-mails, including the

23  mailing we talked about to New Jersey, that would be an

24  action in furtherance.  It could be a simple phone call

25  to a customer where you agreed.  The one that the

1  government is specifically referencing that they would

2  show and that you agree to is this sales meeting that

3  occurred in November of 2012.  Does that make sense?

4          MS. WELCH:  Yes, Your Honor.

5          THE COURT:  Do you have any questions about

6  that?

7          MS. WELCH:  No, Your Honor.

8          THE COURT:  Mr. Hamilton, is there anything

9  else that you would like me to cover or anything I left

10 out before I proceed to my findings?

11         MR. HAMILTON:  No, Your Honor.  Thank you.

12         THE COURT:  In light, Ms. Welch, in light of

13 everything I have told you about your rights and in

14 light of all my questions, how do you plea to the charge

15 listed in Count 1 of the Information, which is the

16 conspiracy charge in violation of 18 United States Code

17 Section 371?  Guilty or not guilty?

18         MS. WELCH:  Guilty.

19         THE COURT:  The Court has observed the

20 appearance and responsiveness of Ms. Welch in giving her

21 answers to the questions asked.  Based on such

22 observation and the answers given, the Court is

23 satisfied that she is in full possession of her

24 faculties, she is not suffering from any apparent

25 physical or mental illness.  She is not under the

1   influence of narcotics or alcohol. The medication which

2   she is taking clearly does not affect her ability to

3   think or understand what is going on.

4         She understands the proceeding in which she is

5   engaged. She understands the nature and meaning of the

6   charges and consequences of her plea of guilt. She is

7   aware of all plea negotiations undertaken on her behalf.

8   The Court finds the defendant is fully competent and

9   capable of entering an informed plea and her plea of

10   guilty is a knowing and voluntary plea supported by an

11   independent basis in fact containing each of the

12   essential elements of the offense. Her plea of guilty,

13   therefore, is accepted.

14         Mr. Hamilton, remind me -- I know we have been

15   setting status conferences in this case. I just moved a

16   bunch of them. Would you prefer I set a status

17   conference in this case, as well, rather than a

18   sentencing date?

19         MR. HAMILTON: Yes, Your Honor.

20         THE COURT: Okay. My next question is and you

21   just remind me if you remember, did we have probation

22   start preparing the Presentence Reports or did we wait

23   and just set the status conference?

24         MR. HAMILTON: My understanding is we are

25   waiting for the status conference.

1    THE COURT:  Ms. Welch, what I am going to do --
2 Judge Guyton set the bond in your case, correct?
3    MS. WELCH:  Yes, sir.
4    THE COURT:  The only thing left for me to do is
5 set a status conference in this case.  Do you know when
6 the status conferences are?
7    COURTROOM DEPUTY:  I can tell you in one
8 second.
9    MR. HAMILTON:  I believe October 1st.
10    THE COURT:  Do you know what time the last one
11 we set was?
12    COURTROOM DEPUTY:  2:30.
13    THE COURT:  We'll set this at 2:45.
14    Mr. Hamilton, is there any reason I guess --
15 here's what I will say.  If later on you determine we
16 can do a bunch at once, just file a motion to
17 consolidate them and I will consolidate them into one.
18 If you prefer they be handled separately, I will leave
19 them as is.
20    MR. HAMILTON:  Yes, sir.
21    THE COURT:  The final thing, Ms. Welch.  Is at
22 some point at the status conference we'll talk about how
23 the Presentence Report process works.  I know Mr. Kurtz
24 will go over it with you in detail.  The only thing I am
25 going to tell you just so you know, at some point

1 probation will meet with you and they'll want to know a

2 whole bunch of things about you so I can get an accurate

3 picture of you at the time of sentencing.  You are

4 welcome to have Mr. Kurtz present there, when they meet

5 with you.  Do you understand that?

6          MS. WELCH:  Yes, Your Honor.

7          THE COURT:  Mr. Kurtz, you will go over with

8 her the entire presentence process.  I know you have

9 already done it, but how the Presentence Report

10 specifically process works.

11          MR. KURTZ:  I will.

12          THE COURT:  Mr. Kurtz, is there anything else

13 you think we need to handle from your perspective?

14          MR. KURTZ:  No, Your Honor.  I don't believe

15 there is.

16          THE COURT:  Mr. Hamilton, anything you think we

17 need to handle with regard to Ms. Welch?

18          MR. HAMILTON:  The only thing we need to do

19 today, Your Honor, the original Plea Agreement from

20 which we were speaking today has been passed back to the

21 government's table.  At this time the United States

22 would like to file that as part of the record as the

23 next record number.

24          THE COURT:  Great.  We'll file it after the

25 waiver of indictment in the record.

1          Thank you very much for doing that.

2          MR. HAMILTON:  Just so the record will be

3   clear, when the United States filed the Plea Agreement

4   that the Court was reviewing, the United States had a

5   copy.  That was received.  Now we are submitting the

6   original.  I have my original signature on it noting

7   that I signed it in court today.  That is a copy of the,

8   it is the original of the copy previously filed.

9          THE COURT:  Thank you very much.  That and the

10  waiver of indictment will be filed in the record.  Judge

11  Guyton already unsealed the case, correct?

12         MR. HAMILTON:  That is correct, Your Honor.

13         THE COURT:  Ms. Welch, thank you.  I will see

14  you whenever I told you I would see you, October 1st.

15         MS. WELCH:  At 2:45.

16         THE COURT:  Thank you.  Have a nice day.

17         (Court was recessed.)

18      I CERTIFY THAT THE FOREGOING IS AN ACCURATE
    TRANSCRIPT OF THE RECORD OF PROCEEDINGS IN THE
19  ABOVE-ENTITLED MATTER.

    _____ _
22                  JOLENE OWEN.
                    Registered Professional Reporter
23                  United States District Court
                    Eastern District of Tennessee

24

25

                              57